IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOM ELECTRIC, INC.,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 595, and DOES 1-20,<br><br>　　　　Respondents.<br>_____/<br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 595; ALAMEDA COUNTY ELECTRICAL INDUSTRY SERVICE CORPORATION; IBEW LOCAL 595 HEALTH & WELFARE TRUST FUND; IBEW LOCAL 595 PENSION TRUST FUND; IBEW LOCAL 595 MONEY PURCHASE PENSION TRUST FUND; IBEW LOCAL 595 VACATION FUND; IBEW LOCAL 595 APPRENTICE & TRAINING FUND; ELECTRICAL CONTRACTORS TRUST; CONTRACT ADMINISTRATION FUND; LABOR MANAGEMENT COOPERATION FUND; VICTOR UNO; and DON CAMPBELL,<br><br>　　　　Counter-Plaintiffs,<br><br>　　v.<br><br>ZOOM ELECTRIC, INC.; VEIKO HORAK; B-SIDE, INC.; and DOES ONE through TEN, inclusive,<br><br>　　　　Counter-Defendants.<br>_____/ | No. C 11-1699 CW<br><br>ORDER DENYING MOTION TO DISMISS (Docket No. 91) AND SETTING CASE MANAGEMENT SCHEDULE |

　　Counter-Defendant B-Side, Inc. moves to dismiss the second amended counter-complaint filed against it by Counter-claimant International Brotherhood of Electrical Workers, Local 595 (the Union), the employee benefit trust funds, Alameda County

Electrical Industry Service Corporation (EISC), the collection agent for the trust funds, and Victor Uno and Don Campbell, trustees for the trust funds and officers of EISC. The Union opposes the motion. The Court took B-Side's motion under submission on the papers. Having considered the papers filed by B-Side and the Union, the Court DENIES B-Side's motion.

BACKGROUND

The background of this matter is set forth in greater detail in the Court's Order of March 20, 2012. See Docket No. 82.

Petitioner Zoom Electric, Inc. (ZEI) initiated this action on April 6, 2011, seeking to vacate an arbitration award in which it was found liable for failing to hire workers on a fire alarm replacement project at Roosevelt Middle School in the Oakland Unified School District in compliance with the governing Project Labor Agreement (PLA) and for failing to make required contributions to the employee benefit trust funds.

On May 6, 2011, the Union brought a counter-complaint with a single cause of action, seeking to confirm and enforce the arbitration award against ZEI and its sole owner, Vieko Horak.

On October 20, 2011, the Court granted the Union's motion for leave to file a first amended counter-complaint, adding a second cause of action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132, 1145. In that claim, the Union alleged that ZEI and Horak failed to make benefit contributions for work performed under the PLA between January and March 2011.

On March 20, 2012, the Court granted the Union's motion to confirm and enforce the arbitration award against ZEI and Horak and denied ZEI's cross-motion to vacate the award. The Court also

2

denied ZEI and Horak's motion to dismiss the Union's ERISA cause of action and granted the Union's motion for summary judgment on that claim against ZEI and Horak. Finally, the Court granted the Union's motion for leave to file a second amended complaint, adding Counter-Defendant B-Side, Inc., which served as ZEI's general contractor on the Roosevelt Middle School project, and various Counter-Plaintiffs. The Court also directed Counter-Plaintiffs to file a verified calculation of the damages requested in the ERISA cause of action, specifically a calculation of the contributions that ZEI failed to make, liquidated damages and interest.

On March 27, 2012, the Union filed a verified calculation of damages on the second cause of action, showing ZEI's balance due on that date, including accrued interest, as $3,581.41.

On May 2, 2012, Horak sent the Union a check for $3,581.41. On the check, he specified that the payment was directed to his liability on the second cause of action.

On May 4, 2012, the Union returned the check, because the Trust Funds' policy is "that partial payment from delinquent contractors are applied to that contractor's oldest month delinquency first, and within that month to interest and liquidated damages before contributions." Thomas Decl. ¶ 6, Ex. 2. Thus, the Union would only accept the check if it were applied to the balances due for October 2010 work, Horak's oldest delinquency.

DISCUSSION

B-Side moves to dismiss the first cause of action, arguing that the Court lacks subject matter jurisdiction over the claim

3

against it.  It moves to dismiss the second cause of action on the grounds that there is no live controversy because, on May 2, 2012, Horak sent the Union a check for $3,581.41.

I.   First Cause of Action

B-Side argues that the federal claims have been adjudicated in this case and that the Court lacks supplemental jurisdiction to consider whether to hold it liable.

B-Side bases its arguments on the Court's statement in the March 20, 2012 Order, in which the Court addressed ZEI's contention that allowing the Union to amend its complaint to add B-Side would substantially increase litigation costs for ZEI.  The Court rejected ZEI's argument, stating that "with this Order, the Court resolves all claims against ZEI, and only the liability of B-side remains to be adjudicated," and "[e]ven if additional discovery were required from ZEI, it would be very limited, and would only go to whether ZEI was the sub-contractor of B-side for the relevant jobs and whether ZEI was licensed during the relevant time period."  Order of March 20, 2012, 30.  This statement, addressing the potential burden of continued litigation on ZEI, does not support B-Side's characterization of the claim against it as arising only under state law.

The first counter-claim in this action is brought against all three Counter-Defendants, seeking to confirm and enforce the arbitration award under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 and holding B-Side liable for that violation through California Labor Code section 2750.5.  While the counter-claim has been fully adjudicated against ZEI and Horak, the latter by piercing the corporate veil, it has not been

4

adjudicated as to B-Side. The theory of the counter-claim against B-Side is that the arbitration award should be confirmed and enforced pursuant to federal law against ZEI and that B-Side should be held liable for the award pursuant to state law. This is not two distinct claims, as B-Side characterizes it. For B-Side to be found liable for anything, the underlying liability based on federal law must be found as well as the obligation imputing that liability to B-Side directly. The claim against B-Side thus arises under both state and federal law.

Even if the claim against B-Side was distinct from those against ZEI and Horak and arose under state law, the Court has supplemental jurisdiction over it and does not exercise its discretion to decline that jurisdiction.

In its reply, B-Side argues for the first time that the Court cannot exercise supplemental jurisdiction over a state-law claim when that claim brings a new party in the action. In doing so, B-Side relies heavily on the Ninth Circuit's decision in Ayala v. United States, 550 F.2d 1196 (9th Cir. 1979), and does not recognize the importance of Congress's enactment of 28 U.S.C. § 1367 in 1990.

"Prior to the passage of § 1367, supplemental jurisdiction was more circumscribed and the addition of a party was one factor that barred jurisdiction over additional claims brought by plaintiffs." Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1172 (9th Cir. 2002). In 1979, the Ninth Circuit in Ayala "held that federal courts were without power to exercise pendent party jurisdiction under the Federal Tort Claims Act." Mendoza, 301 F.3d at 1173 (discussing Ayala, 550 F.2d at 1199-1200). A decade

5

later, in Finley v. United States, 490 U.S. 545, 549 (1989), the Supreme Court "'assumed, without deciding,' that pendent party jurisdiction was constitutional, but cautioned that it requires an express statutory jurisdictional grant." Mendoza, 301 F.3d at 1173. "In 1990, Congress enacted § 1367 to provide such an express grant." Id. (citing Pub. L. No. 101-650 § 310). See also 28 U.S.C. § 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."). Subsequently, in Mendoza, the Ninth Circuit recognized that "Ayala's restrictive interpretation does not survive the 1990 passage of § 1367." Id. at 1173-74 (observing that "any suggestion in Ayala that the Constitution imposes a bar on supplemental jurisdiction over additional parties independent of statutory authorization has been undermined by intervening Supreme Court authority," and thus that the prior panel decision in Ayala is no longer binding).

Given the clear text of § 1367 and the Ninth Circuit's decision in Mendoza, the Court rejects B-Side's argument that it cannot exercise supplemental jurisdiction over additional parties unless "an independent ground for federal jurisdiction" is shown. Reply, at 7-8.

Title 28 U.S.C § 1367 grants federal courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal

6

claims would normally be tried together." <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 978 (9th Cir. 2004) (quoting <u>Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.</u>, 333 F.3d 923, 925 (9th Cir. 2003)). Here, the claims against ZEI and Horak share a common nucleus of operative fact with the claims against B-Side; both arise out of the enforceability of the arbitration award. Further, the claims against Horak and B-side each involve the status of ZEI's license at the time of the construction project.

> Although this Court has supplemental jurisdiction, it may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
>   (1) the claim raises a novel or complex issue of State law,
>
>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>   (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "[W]hile discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367, it is informed by the [<u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966),] values of 'economy, convenience, fairness, and comity.'" <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997).

In its motion, B-Side argues that the Court should decline jurisdiction under § 1367(c)(3), because all federal claims have been dismissed. In its reply, it also contends that, since the federal claims have been resolved, the state claim predominates

7

because it is the only claim remaining to be adjudicated.  B-Side does not argue that the state law issues here are novel or complex or that there are other exceptional circumstances warranting dismissal.

The Ninth Circuit has upheld a district court's exercise of its discretion to decline supplemental jurisdiction over remaining state claims after it resolved the federal claims on summary judgment.  See Oliver v. Ralphs Grocery Co., 654 F.3d 903, 911 (9th Cir. 2011) (citing Sanford v. Member Works, Inc., 625 F.3d 550, 561 (9th Cir. 2010); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1169 (9th Cir. 2002) (citing Cohill, 484 U.S. at 350 n.7).  In those cases, however, the federal claims were resolved in favor of the defendants, who also sought dismissal of the state law claims.  Further, rather than relying solely on the resolution of the federal claims, the Ninth Circuit also cited Cohill's factors of "judicial economy, convenience, fairness, and comity."  Here, the B-Side shares counsel with ZEI and Horak, and the parties have already thoroughly litigated the enforceability of the arbitration agreement and have conducted discovery into the licensed status of ZEI.  B-Side participated in the earlier motion practice, having submitted a declaration in support of ZEI and Horak's position.  Additionally, the Court has already conducted substantial analysis of the applicability of California Labor Code section 2750.5, specifically of whether the LMRA preempts the section.  Thus, judicial economy and convenience do not favor dismissal.  Further, the fact that the summary judgment order resolved the claims against Horak and ZEI in the Union's favor

8

Case4:11-cv-01699-CW Document102 Filed06/27/12 Page9 of 12

means that dismissal of the remaining claims would not promote a fair result; here, unlike in <u>Oliver</u> and <u>Bryant</u>, if those claims had gone to trial, they would have been adjudicated in favor of the Union.  The fact that they were resolved in a more efficient manner prior to trial, and were found meritorious, does not mean that the Union is then barred from proceeding with its other claims.  <u>See also</u> <u>Parker v. Scrap Metal Processors, Inc.</u>, 468 F.3d 733, 745 (11th Cir. 2006) (stating that that court could locate no authority in which state law claims were "dismissed against a party's preference after the federal claims had been tried and resolved in that party's favor").  Finally, the fact that the district courts in <u>Oliver</u> and <u>Bryant</u> did not abuse their discretion in declining supplemental jurisdiction over the state law claims in those cases does not mean that they necessarily would have abused their discretion by accepting jurisdiction.

Accordingly, the Court DENIES B-Side's motion to dismiss the first cause of action.

II.  Second cause of action

B-Side moves to dismiss the second cause of action, arguing that the claim is moot, because on May 2, 2012, Horak sent the Union a check for $3,581.41 in full satisfaction of the claimed damages for the failure to pay timely the benefits for January through March 2011.

The Court rejects this argument for a number of reasons.  First, on its face, this check did not meet Horak's outstanding liability for his contributions made between January and March 2011.  The check's amount covered interest only through March 27,

9

1 2012 when the Union filed its verified calculation.  Interest
2 continued to accrue, and Horak did not tender that amount.

3      Further, more importantly the check amounts to a settlement
4 offer, which the Union rejected.  B-Side does not reply to the
5 Union's contention that Horak is bound by the Trust Funds'
6 established allocation policy, applying the payment to his oldest
7 indebtedness first.  Further, Horak did not satisfy the full
8 amount of relief sought: the Union also seeks costs and attorneys'
9 fees to cover expenses incurred in this action.  While B-Side
10 cites cases in which courts have held that "an interest in
11 attorney's fees is insufficient to create an Article III case or
12 controversy where a case or controversy does not exist on the
13 merits of the underlying claim," here, the settlement offer
14 without attorneys' fees was rejected, not accepted, so the
15 underlying claim was not resolved or mooted.  B-Side cites cases
16 in which a claim was rendered moot "by payment and satisfaction of
17 a final judgment."  Reply, at 1 (quoting U.S. Parole Commission v.
18 Geraghty, 445 U.S. 388, 401 (1980)).  However, here, there was no
19 final judgment entered; thus, Horak did not satisfy any such final
20 judgment.  When a final judgment is entered, it may include costs
21 and attorneys' fees.

22      Accordingly, the Court DENIES B-Side's motion to dismiss the
23 second cause of action.

                              CONCLUSION

25      For the reasons set forth above, the Court DENIES B-Side's
26 motion to dismiss (Docket No. 91).

Having considered the parties' separate case management statements, the Court sets forth the following case management schedule:

| Event | Date |
|---|---|
| Completion of fact discovery | Thursday, August 30, 2012 |
| Deadline for Counter-Plaintiffs to file their motion for summary judgment, in a brief of twenty-five pages or less. | Thursday, September 13, 2012 |
| Deadline for B-Side to file its opposition to Counter-Plaintiffs' motion and its cross-motion for summary judgment, if any, in a single brief of twenty-five pages or less. | Thursday, September 27, 2012 |
| Deadline for Counter-Plaintiffs to file their reply in support of their motion for summary judgment and their opposition to B-Side's cross-motion for summary judgment, in a single brief of fifteen pages or less. | Thursday, October 4, 2012 |
| Deadline for B-Side to file its reply in support of its cross-motion for summary judgment, in a brief of fifteen pages or less. | Thursday, October 11, 2012 |
| Deadline for the parties to file a joint case management conference statement. | Thursday, October 18, 2012 |
| Hearing on motions for summary judgment, and further case management conference. | Thursday, October 25, 2012 at 2:00 p.m. |
| Final pretrial conference | Wednesday, January 23, 2012 at 2:00 p.m. |
| One-day bench trial | Monday, February 4, 2012 at 8:30 a.m. |

The Court will entertain a stipulation to change the case management schedule, provided that opposing briefs are filed in series as described above, not contemporaneously, that the parties' briefing is completed at least two weeks prior to the hearing date, and that the hearing on the motions for summary

11

judgment takes place at least three months before the start of trial.

IT IS SO ORDERED.

Dated: 6/27/2012

CLAUDIA WILKEN
United States District Judge