IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOM ELECTRIC, INC., | No. C 11-1699 CW |
| Petitioner, | ORDER DENYING MOTION TO SET ASIDE DEFAULT (Docket No. 125) |
| v. | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 595, and DOES 1-20, | |
| Respondents. | |
| _____/ | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 595; ALAMEDA COUNTY ELECTRICAL INDUSTRY SERVICE CORPORATION; IBEW LOCAL 595 HEALTH & WELFARE TRUST FUND; IBEW LOCAL 595 PENSION TRUST FUND; IBEW LOCAL 595 MONEY PURCHASE PENSION TRUST FUND; IBEW LOCAL 595 VACATION FUND; IBEW LOCAL 595 APPRENTICE & TRAINING FUND; ELECTRICAL CONTRACTORS TRUST; CONTRACT ADMINISTRATION FUND; LABOR MANAGEMENT COOPERATION FUND; VICTOR UNO; and DON CAMPBELL, | |
| Counter-Plaintiffs, | |
| v. | |
| ZOOM ELECTRIC, INC.; VEIKO HORAK; B-SIDE, INC.; and DOES ONE through TEN, inclusive, | |
| Counter-Defendants. | |
| _____/ | |

```
B-SIDE, INC.,

        Cross-Claimant,

    v.

VEIKO HORAK, doing business as
ZOOM ELECTRIC,

        Cross-Defendant.
_____/
```

Cross-Defendant Veiko Horak moves to set aside the default entered against him on December 5, 2012. Cross-Plaintiff B-Side, Inc. opposes the motion. The Court takes the motion under submission on the papers and DENIES it.

## BACKGROUND

On August 15, 2012, B-Side filed a cross-claim against Horak, doing business as Zoom Electric, a sole proprietorship. Docket No. 105. B-Side did not name Zoom Electric, Inc. as a Cross-Defendant. The cross-claim was served upon Horak through the electronic filing system upon his attorney of record, Benjamin Martin. At that time, Martin had represented both Horak and Zoom Electric, Inc.

On August 28, 2012, Horak filed a notice of substitution of attorney removing Martin and substituting himself in pro per. Docket No. 106.

On October 25, 2012, the Court held a hearing on several motions. Docket No. 119. At that time, Horak stated that he no longer was represented by Martin because Martin had previously represented both him and B-Side, and that Martin had "pretty much told me that the case is over, there was nothing I can do." The Court told him that there was something he could do: that he could

2

file an answer to B-Side's cross-claim, although it was already overdue, and that if he did not, he might be liable for anything that B-Side was ordered to pay.  Horak responded that, in that case, he would like additional time to hire a new attorney and to file an answer.  The Court permitted Horak an additional twenty-eight days to file an answer and directed B-Side to seek entry of default if he did not do so.  The Court also provided Horak with information regarding the Legal Help Center, a free service provided by the Bar Association of San Francisco to provide information and limited-scope legal assistance to pro se litigants in civil cases in the district.

On December 3, 2012, thirty-nine days after the hearing, B-Side moved for entry of default.  Docket No. 120.

On December 5, 2012, Zoom Electric, Inc. filed a notice of substitution of attorney removing Martin as its counsel and substituting Eric Milliken in his place.  Docket No. 121.  Veiko Horak signed the substitution on behalf of Zoom Electric.  Id.  In the instant motion, Milliken represents that, on or about that date, Horak also retained him to represent Horak himself.  Mot. at 4.  However, no corresponding notice was filed to substitute Milliken as counsel for Horak himself.

On December 5, 2012 as well, Milliken contacted B-Side's counsel and left a message stating that he would be representing Horak and inquired about B-Side voluntarily vacating its entry of default.  Last Decl., Docket No. 126, ¶ 3; Milliken Decl., Docket No. 125-1, ¶ 3.  On that same day, the Clerk entered Horak's default.  Docket No. 122.

3

On December 11, 2012, Horak filed the instant motion to set aside the default.  Docket No. 125.

On December 26, 2012, B-Side filed its six-page opposition to Horak's motion.  Docket No. 126.  B-Side attached to its opposition a separate, one-page evidentiary objection to portions of Milliken's declaration in support of the motion.  Docket No. 126-2.[1]

Pursuant to Civil Local Rule 7-3(c), Horak's deadline to file a reply in support of his motion was January 2, 2013.  No reply was filed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that a court "may set aside an entry of default for good cause."  The district court has discretion to determine whether a party demonstrates "good cause."  Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969).  The court's discretion is particularly broad where a party seeks to set aside an entry of default rather than a default judgment.  Mendoza v. Wight Vineyard Mgmt., 783 F.2d 941, 945 (9th Cir. 1986).  "This is because in the Rule 55 context there is no interest in the finality of the judgment with which to contend."  United States v. Signed Personal Check No. 730 of Yubran S. Mesle (Mesle), 615 F.3d 1085, 1091 n.1 (9th Cir. 2010).

---

[1] Pursuant to Civil Local Rule 7-3(a), any evidentiary or procedural objections to the motion were required to be contained in the opposition brief itself.  Because B-Side's opposition brief and evidentiary objections together total significantly less than the twenty-five page limit, the Court excuses B-Side's improper filing of its evidentiary objections as a separate document.

4

In evaluating whether a party has demonstrated good cause, a district court may consider the following factors, which courts refer to as the "Falk factors": (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default would prejudice the plaintiff. Brandt v. Am. Bankers, 653 F.3d 1108, 1111 (9th Cir. 2011) (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)); see also Mesle, 615 F.3d at 1091 & n.1 (noting that the same test applies for motions seeking to set aside entry of default and relief from a default judgment, although it is applied more liberally in the former context). The standard is disjunctive and "the district court is free to deny relief if any of the three factors is true." Brandt, 653 F.3d at 1111 (quoting Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004)) (internal quotation marks and formatting omitted). Thus, "a finding of culpability on the part of a defaulting defendant is sufficient to justify the district court's exercise of its discretion to deny relief." Id.

Default judgments are "ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). Thus, whenever "timely relief is sought from the default . . . and the movant has a meritorious defense," a court should resolve any doubt in favor of setting aside the default. Mendoza, 783 F.2d at 945-46 (quoting Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir. 1974)) (internal quotation marks omitted; ellipses in original). The party seeking to vacate the entry of default bears

5

the burden of demonstrating that these factors favor doing so. TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).

DISCUSSION

I.   Culpable conduct

Horak argues that he did not act culpably or intentionally fail to answer. He explains that, due to his lack of knowledge of the legal system and limited English comprehension, at the time he retained new counsel, he did not understand that he should have filed an answer and thought that he needed only to file a case management statement. B-Side objects to Milliken's declaration in support of these facts and argues that Horak's conduct was culpable, pointing out that the Court specifically told Horak of the need to file an answer, and that Horak did not require the aid of an interpreter at his deposition in this case.

"'[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer.'" Mesle, 615 F.3d at 1092 (quoting TCI Group, 244 F.3d at 697) (brackets and emphasis in original). The Ninth Circuit has explained that "in this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer" or for having demonstrated "simple carelessness." Id. Instead, "to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Id. (quoting TCI Group, 244 F.3d at 697); see also id. at 1094 (concluding it was error to

6

find a defendant's conduct culpable based on "his failure to act after being notified of the need to do so, in the absence of any indication that he acted in bad faith").  The Ninth Circuit has typically found culpability only if "'there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'"  Id. at 1092 (quoting TCI Group, 244 F.3d at 698); see also TCI Group, 244 F.3d at 697 ("Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional.'").  The Ninth Circuit has only found culpability based simply on the failure to answer after being provided with notice in some limited circumstances in which the moving party was "a legally sophisticated entity or individual," and has specifically cautioned against such a finding when the individual was "not a lawyer" and "was unrepresented at the time of the default."  Id. at 1093.

    The central dispute is whether Horak has submitted a credible, good faith explanation negating bad faith.  To support the facts asserted in his motion regarding the reasons for his failure to answer, Horak has submitted the declaration of his attorney only and has not offered his own declaration.  In Milliken's declaration, he asserts,

> The Defendant's lack of knowledge of the U.S. legal system, coupled with his limited comprehension of the English language, has resulted in the Defendant missing the deadline for answering the complaint.  When the Defendant retained my services he was under the impression that the only document that needed to be submitted was the case management statement.  He did not

7

> intentionally fail to answer. To the contrary, he retained my services because he was aware that something needed to be done, but lacked the understanding of the U.S. legal system to understand what needed to be done. . . . The Defendant did not miss the deadline to answer for any willful reason.

Milliken Decl. ¶¶ 2-3. B-Side objects to these statements as "inadmissible hearsay, a non-expert opinion, and argument." B-Side's Objections to the Milliken Decl., Docket No. 126-2, ¶¶ 1-2. Horak has not responded to B-Side's evidentiary objections.

The Court sustains B-Side's unopposed objections to these portions of the declaration. Although Milliken does not directly repeat the out-of-court statements that Horak made to him, Milliken's recitation of Horak's beliefs at the time that he was retained or reasons for his inaction is based on inadmissible hearsay, offered to establish that Horak in fact had those beliefs and reasons. Further, Milliken presents his opinion as to the reasons that Horak failed to act but does not lay any proper foundation for its admission as rationally based on his personal observation and recollection of concrete facts. See United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005); Federal Rule of Evidence 701 (addressing opinion testimony by lay witnesses). In addition, Milliken impermissibly includes in his declaration statements that consist of legal conclusions and argument, in violation of Civil Local Rule 7-5.

To support the facts outside of the record underlying his assertions that his conduct was excusable, Horak was required to submit admissible evidence. See SEC v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998) (neglect in failing to answer was willful and not excusable where record contained no affidavit with a satisfactory

8

explanation); In re Stone, 588 F.2d 1316, 1319 (10th Cir. 1978) (distinguishing between the requirement to provide evidence of excusable neglect and alleging a meritorious defense); Moore's Federal Practice, § 55.71[2] (addressing Federal Rule of Civil Procedure 43(c), which relates to the proffer of evidence on a motion, in the context of a motion to set aside entry of default). That Milliken's opinions are at least arguably inconsistent with the exchange at the October 25 hearing, at which Milliken was not present, and with the fact that Horak was able to testify competently without an interpreter at his deposition in this matter makes competent evidence even more important.

Accordingly, Horak has not met his burden to offer a credible and good faith explanation for his failure to answer.

II. Meritorious defense

"'A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy.'" Mesle, 615 F.3d at 1094 (quoting TCI Group, 244 F.3d at 700). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default." Id. (quoting TCI Group, 244 F.3d at 700). However, a "'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment." Franchise Holding II, 375 F.3d at 926 (quoting Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969)). The underlying concern "is to determine whether there is

9

some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." <u>Haw. Carpenters' Trust Funds v. Stone</u>, 794 F.2d 508, 513 (9th Cir. 1986).

In this action, B-Side is being charged with liability for certain claims made against Zoom Electric, Inc. under California law on the basis that the latter entity was unlicensed and B-Side had hired it as a subcontractor. In the cross-claim, B-Side alleges that it entered into a contract with Horak, who was a licensed electrical subcontractor doing business as Zoom Electric, a sole proprietorship, and that, after B-Side had signed the contract, the contract was modified by adding "Inc." after "Zoom Electric" on the signature block in order to state that Zoom Electric, Inc. was the subcontractor instead of Horak. Cross-Claim ¶¶ 6-7. B-Side further contends that, under the agreement, whether between it and Horak as a sole proprietor or it and Horak as the alter ego of Zoom Electric Inc., Horak had agreed to indemnify it for any liability it incurred in the instant suit. <u>Id.</u> at ¶¶ 9-14.

In the instant motion, in support of his argument that he has a meritorious defense, Horak states only,

> B-Side has accused the Defendant of fraud by adding "Inc." after his Business Name, after the contract was signed, which functionally changed the contracting business entity. However B-Side has offered no facts to back-up this meritless accusation. The fact is that B-Side was the drafter of the contract and either intentionally or negligibly had my client sign a contract with the wrong party's names. The Defendant can establish the necessary facts to defend himself against these meritless accusations.

10

1  Mot. at 5.  Horak has not submitted a proposed answer.  B-Side
2  responds that this is insufficient and that Horak did not submit a
3  declaration or any other specific facts to support his allegation
4  that B-Side was responsible for the incorrect name on the
5  contract.  Opp. at 5.
6      Although Horak need meet only a minimal burden here, the
7  averments that he has made in his motion are plainly insufficient
8  to carry this burden.  The only factual assertion that Horak made,
9  that B-Side, the drafter, intentionally or negligently had Horak
10 sign a contract with the wrong name, Zoom Electric, Inc., does not
11 constitute a defense to B-Side's claim that it is entitled to
12 indemnification from Horak under the agreement whether it was
13 between B-Side and Horak, doing business as Zoom Electric, or
14 Horak, as the alter ego of Zoom Electric, Inc.  His general
15 proclamation that he would be able to establish the necessary
16 facts to defend himself is not enough to justify vacating a
17 default.
18     Accordingly, Horak has not met his burden to allege
19 sufficient facts that would constitute a defense if ultimately
20 proven to be true.
21 III. Prejudice
22     Setting aside a default is considered prejudicial if it
23 results "in greater harm than simply delaying resolution of the
24 case."  TCI Group, 244 F.3d at 701.  The proper inquiry is whether
25 the opposing party's "ability to pursue his claim will be
26 hindered."  Id. (quoting Falk, 739 F.2d at 463).  To be considered
27 prejudicial, a "delay must result in tangible harm such as loss of
28 evidence, increased difficulties of discovery, or greater

11

opportunity for fraud or collusion." Id. (citing Thompson v. American Home Assur. Co., 95 F. 3d 429, 432 (6th Cir. 1996)).

Horak argues that B-Side would suffer no prejudice if his default were set aside. B-Side responds that it would because the motion was untimely and it is scheduled for hearing shortly before the trial in this matter is set to commence. Because B-Side points to no prejudice other than the delaying of the resolution of this matter, which does not constitute prejudice for this purpose, Horak has met his burden of demonstrating that this factor favors relieving him of his default.

IV. Summary

Even in light of the preference of resolving claims on their merits, the Court finds that the Falk factors favor denial of the motion, particularly because to set aside Horak's default "in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." Haw. Carpenters' Trust Funds, 794 F.2d at 513.

CONCLUSION

For the reasons set forth above, the Court DENIES Horak's motion (Docket No. 125).

IT IS SO ORDERED.

Dated: 1/17/2013

CLAUDIA WILKEN
United States District Judge

12