IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOM ELECTRIC, INC., | No. C 11-1699 CW |
| Petitioner, | ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (Docket No. 137) |
| v. | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 595, and DOES 1-20, | |
| Respondents. | |
| _____/ | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 595; ALAMEDA COUNTY ELECTRICAL INDUSTRY SERVICE CORPORATION; IBEW LOCAL 595 HEALTH & WELFARE TRUST FUND; IBEW LOCAL 595 PENSION TRUST FUND; IBEW LOCAL 595 MONEY PURCHASE PENSION TRUST FUND; IBEW LOCAL 595 VACATION FUND; IBEW LOCAL 595 APPRENTICE & TRAINING FUND; ELECTRICAL CONTRACTORS TRUST; CONTRACT ADMINISTRATION FUND; LABOR MANAGEMENT COOPERATION FUND; VICTOR UNO; and DON CAMPBELL, | |
| Counter-Plaintiffs, | |
| v. | |
| ZOOM ELECTRIC, INC.; VEIKO HORAK; B-SIDE, INC.; and DOES ONE through TEN, inclusive, | |
| Counter-Defendants. | |
| _____/ | |

```
B-SIDE, INC.,

        Cross-Claimant,

    v.

VEIKO HORAK, doing business as
ZOOM ELECTRIC,

        Cross-Defendant.
_____/
```

Counter-Plaintiffs International Brotherhood of Electrical Workers, Local 595 (the Union), the employee benefit trust funds, Alameda County Electrical Industry Service Corporation (EISC), which is the collection agent for the trust funds, and Victor Uno and Don Campbell, who are trustees for the trust funds and officers of EISC, move for an award of attorneys' fees and costs incurred in prosecuting the instant case.  In the present motion, Counter-Plaintiffs seek entry of such an award against Counter-Defendant B-Side, Inc. only.[1]  B-Side opposes their motion.  The facts and history of this case are set forth in detail in the Court's Order of February 8, 2013.  The Court took the motion under submission on the papers.  Having considered the papers filed by the parties, the Court GRANTS Counter-Plaintiffs' motion.

                              DISCUSSION
I.   Entitlement to Attorneys' Fees

Counter-Plaintiffs move under section 502 of the Employee Retirement Income Security Act (ERISA) for attorneys' fees and costs incurred in prosecuting their ERISA claim.  They also move under California Labor Code section 218.5 and California Code of

---

[1] Counter-Defendants Vieko Horak and Zoom Electric, Inc. (ZEI) have both filed for bankruptcy.

2

Civil Procedure section 1021.5 for fees and costs incurred during the prosecution of their entire case, including their first cause of action to confirm and enforce the Joint Administrative Committee (JAC) award for "Payment to workers on the IBEW 595 Available for Work list of 1648 hours totaling $116,299.36" and "Payment on behalf of employees of Zoom Electric, Inc. to the IBEW, 595 Trust Funds totaling $42,963.36 for hours worked in violation of the" Project Labor Agreement (PLA).  Counter-Plaintiffs also include in their motion a request for fees and costs incurred in filing the instant motion.

"B-Side concedes that it is liable for the portion of attorney's fees and costs that are attributable to . . . the ERISA violation alleged in the Second Cause of Action in the Second Amended Counter-Complaint" (2ACC).  Opp. at 1 n.2.  B-Side also concedes that it is liable for part of Counter-Plaintiffs' attorneys' fees and costs related to the first cause of action under California Labor Code section 218.5.  Opp. at 4.  Specifically, B-Side concedes that it is liable for fees and costs that are attributable to the portion of the JAC award requiring payment on behalf of employees of ZEI.  Id.  Thus, B-Side disputes only that Cross-Plaintiffs are entitled to fees and costs attributable to the portion of the JAC award requiring payment to workers on the available for work list.  B-Side also seeks to limit its liability to fees and costs incurred after the 2ACC was filed, joining B-Side to this action.  B-Side has not challenged Counter-Plaintiffs' entitlement to fees and costs incurred in the filing of the instant motion.

3

> A. Liability for fees and costs attributable to the portion of the JAC award requiring payment to workers on the available to work list

Counter-Plaintiffs seek an award of fees and costs for this portion of their fees under both California Labor Code section 218.5 and California Code of Civil Procedure section 1021.5.

Under section 1021.5, which codifies the private attorney general doctrine, a court may, under certain circumstances, "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Fees may be awarded under this code section if three requirements are met:

> (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons,
>
> (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and
>
> (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5. "The burden is on the claimant to establish each prerequisite to an award of attorney fees under section 1021.5." Ebbetts Pass Forest Watch v. Dep't of Forestry & Fire Prot., 187 Cal. App. 4th 376, 381 (2010) (citation omitted). "The decision whether the claimant has met his burden of proving each of these prerequisites and is thus entitled to an award of attorney fees under section 1021.5 rests within the sound discretion of the trial court and that discretion shall not be disturbed on appeal absent a clear abuse." Ryan v. California Interscholastic Fed'n, 94 Cal. App. 4th 1033, 1044 (2001).

B-Side argues that it was not an "opposing party" for much of this litigation because it was not added as a party until after

4

Counter-Plaintiffs filed the 2ACC.  However, B-Side provides no authority that section 1021.5 requires that it was an opposing party for the entirety of the litigation to be responsible for attorneys' fees or that such fees should be limited to that time period.  California courts have construed "the term 'opposing party' as used in section 1021.5 to mean a party whose position in the litigation was adverse to that of the prevailing party." Nestande v. Watson, 111 Cal. App. 4th 232, 240-241 (2003).  "Simply put, an 'opposing party' within the meaning of section 1021.5 is a losing party."  Id.  Here, B-Side indisputably took a position adverse to that of Counter-Plaintiffs and was thus an opposing party within the meaning of the statute.

Counter-Plaintiffs have met their burden to show that a significant benefit was conferred on the general public or a large group of people through the results that they obtained.  B-Side argues that the "general public are not members of labor unions that participate from time-to-time in project labor agreements." Opp. at 5.  However, as Counter-Plaintiffs correctly point out, the general public does benefit from a ruling that general contractors are responsible for this type of malfeasance by their unlicensed subcontractors because it "spares the public from bearing the costs of supporting unpaid or improperly paid workers."  Reply at 11.  It also effectuates the legislative intent in California Labor Code section 2750.5 by helping to "end the 'subterranean economy' where contractors hire unlicensed subcontractors and pay them in cash, resulting in the 'loss of large sums in taxes, employee social insurance contributions, and employee pension funds,'" or colluding to cheat workers out of

5

their due wages and benefits. Sanders Constr. Co., Inc. v. Cerda, 175 Cal. App. 4th 430, 435 (2009); see also Folsom v. Butte Cnty. Assn. of Gov'ts., 32 Cal. 3d 668, 671 (1982) (recognizing, in a case in which the defendants ultimately agreed to establish four transit systems, that the plaintiffs "vindicated legislative intent and thus benefited not only those who are transit-dependent in Butte County but the citizenry as a whole").

B-Side also argues that Counter-Plaintiffs were sufficiently motivated by their own pecuniary interest to pursue these claims on their own. In considering this factor, courts have recognized that "an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter." Ryan, 94 Cal. App. 4th at 1044; see also Conservatorship of Whitley, 50 Cal. 4th 1206, 1220-21 (2010) (noting that the relevant inquiry here focuses on the litigant's objective financial incentives to bring the litigation, not the actual recovery attained or other subjective motivations). This is because "Code of Civil Procedure section 1021.5 is intended to provide an incentive for private plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the costs of litigation." Id. at 1221 (internal quotation marks and citation omitted).

B-Side contends that the JAC award was for a sizable amount of money, that Counter-Plaintiffs had the resources to prosecute this claim and that they went after B-Side "to find a deep pocket," not to vindicate a public right. Opp. at 6. However, as

6

1 noted above, the results achieved and Counter-Plaintiffs'
2 subjective motivations are irrelevant to this inquiry.  Further,
3 that Counter-Plaintiffs had the resources to prosecute their claim
4 is also irrelevant.  See <u>Am. Fed'n of Labor v. Emp't Dev. Dep't</u>,
5 88 Cal. App. 3d 811, 822 (1979) ("the code does not make financial
6 status of the prevailing party the criteria for awarding fees").
7 In addition, although this portion of the JAC award, $116,299.36,
8 collectively was a significant amount of money, it was owed to a
9 large number of people who were individually owed small amounts of
10 lost wages that it was unlikely that they would pursue on their
11 own.  The Court finds that, under these circumstances, "the
12 additional carrot of shifted fees" is warranted "to ensure that
13 the public interest will be vindicated."  <u>Unocal Corp. v. United
14 States</u>, 222 F.3d 528, 544 (9th Cir. 2000).  Finally, in the
15 interest of justice, attorneys' fees should not be paid out of the
16 small recoveries that were achieved on behalf of the various
17 individuals on the available for work list.

18     Accordingly, Counter-Plaintiffs have met their burden to show
19 that they are entitled under section 1021.5 to recovery of this
20 portion of their fees.  Because Counter-Plaintiffs are eligible to
21 receive attorneys' fees under section 1021.5, the Court need not
22 address whether they may also do so under section 218.5.

23     B. Special circumstances

24     B-Side seeks to use the doctrine of special circumstances to
25 limit its liability for attorneys' fees and costs to only that
26 incurred by Counter-Plaintiffs after the 2ACC was filed and B-Side
27 was joined in this action.  The parties agree that, under both
28 federal and state law, an award of attorneys' fees can be denied

7

1  if special circumstances would render such an award unjust.  Opp.
2  at 2; Reply at 6 n.5.  The parties also agree that the doctrine of
3  special circumstances is narrowly applied.  Opp. at 2; Reply at 6
4  n.5.
5      B-Side contends that, because it "had nothing to do with the
6  filing or the prosecution of this action until B-Side was served"
7  with the 2ACC, it should not be required to pay for fees and costs
8  that Counter-Plaintiffs incurred prior to that time.  Opp. at 3.
9  It also argues that Counter-Plaintiffs made a "tactical decision"
10 to delay in bringing claims against B-Side.  Id.
11     The Court finds that B-Side's contentions do not amount to
12 special circumstances that justify denial of attorneys' fees in
13 their entirety or for the time period before it was served.
14 Counter-Plaintiffs' efforts in the prosecution of their claims
15 against ZEI and Horak were an integral part of the prosecution of
16 their claims against B-Side as well and, had they not already
17 expended the efforts that they did during that phase of the
18 litigation, they would have been required to do so after B-Side
19 was made a party.
20 II.  Reasonableness of Fees
21     "'The most useful starting point for determining the amount
22 of a reasonable fee is the number of hours reasonably expended on
23 the litigation multiplied by a reasonable hourly rate.'"
24 Nadarajah v. Holder, 569 F.3d 906 (2009) (quoting Hensley v.
25 Eckerhart, 461 U.S. 424, 433-34 (1983)); see also Ctr. for
26 Biological Diversity v. Cnty. of San Bernardino, 188 Cal. App. 4th
27 603, 616 (2010).  The parties do not dispute that the lodestar
28 amount properly includes expenses ordinarily billed to a client

8

and not included in the hourly rate. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Hensley, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id.

A. Reasonable hourly rate

"The reasonable market value of the attorney's services is the measure of a reasonable hourly rate." MBNA America Bank, N.A. v. Gorman, 147 Cal. App. 4th Supp. 1, 13 (2006) (citing Ketchum v. Moses, 24 Cal. 4th 1122, 1139 (2001)). The parties dispute the reasonable market value for the services of Counter-Plaintiffs' counsel, the law firm of Leonard Carder LLP.

Counter-Plaintiffs assert that reasonable market rates in labor and employment cases are $675 per hour for partners, between $300 and $400 per hour for associates, and between $180 and $225 per hour for law clerks and paralegals. In support of this, they submit two declarations from Philip C. Monrad, a partner at Leonard Carder, with twenty-two years of experience, including sixteen years of experience practicing labor and employment law. Monrad Decl. ¶ 2. Mr. Monrad attests that, in his "experience and knowledge of the market rates for labor and employment attorneys, as well as paralegals and law clerks, the hourly rates sought . . . reflect[] the market rates for the services rendered by the attorneys, paralegals, and law clerks." Monrad Reply Decl. ¶ 3; see also Monrad Decl. ¶ 3. He also states that he and members of Leonard Carder previously have been awarded these rates and that, in his experience as a labor and employment lawyer, such rates have been found to be reasonable. Id. He cites this Court's

9

decision in <u>Gilmer v. Alameda-Contra Costa Transit Dist.</u>, Case No. 08-1586, Docket No. 269, a collective action brought under the Fair Labor Standards Act in which this Court granted the plaintiffs' unopposed motion for approval of a settlement agreement and request for attorneys' fees and costs for Leonard Carder.  In <u>Gilmer</u>, the Court described rates sought by Leonard Carder as reasonable market rates, based on a declaration submitted by Mr. Monrad so asserting.  <u>Id.</u> at 5.  Counter-Plaintiffs have also submitted copies of Leonard Carder's billing records which show that it charged them between $235 and $250 per hour for attorneys' time and $150 per hour for law clerks and paralegals.  Hwang Decl. ¶ 7, Ex. B.

B-Side responds, without citation to any supporting legal authority, that the evidence provided by Counter-Plaintiffs is insufficient and "submits that comparing market rates in class action and market rates in this action is an apples and watermelons comparison."  Opp. at 8 (errors in original).  B-Side does not argue that the appropriate rate is that contained in Leonard Carder's billing records.  <u>See</u> <u>Ctr. for Biological Diversity</u>, 188 Cal. App. 4th at 619 (that a "firm accepts reduced rates from plaintiffs . . . does not affect its right to seek reasonable market rates").  Instead, it contends that the Court should use the billing rate that its counsel, Last & Faoro, has been charging it, $325 per hour.  In support of this argument, B-Side offers the declaration of its attorney, William C. Last, Jr., a partner at Last & Faoro.  Mr. Last attests that he has been a member of the California bar since 1978 and that his "practice has consisted primarily of construction related litigation."  Last

10

Decl. ¶ 2. He further states that the hourly rate charged by his firm is "consistent with the market rates for similar services charged by attorneys in the San Francisco Bay Area." Id. at ¶ 3.

The evidence provided by Counter-Plaintiffs is sufficient to establish that the rates requested are reasonable market rates for the services provided. See Quinones v. Chase Bank USA, N.A., 2011 U.S. Dist. LEXIS 145199 (S.D. Cal.), at *8 ("The moving party satisfies its burden through its own affidavits and no additional evidence is needed.") (citing Gorman, 147 Cal. App. 4th Supp. at 13). Mr. Monrad's declaration does not provide the hourly rate for representation in class or collective action cases only and instead provides evidence of the market rates charged by labor and employment attorneys in general. Although B-Side's counsel may have charged it a lower rate, it has provided no evidence that this lower rate was in keeping with the prevailing market rate for employment and labor attorneys. Instead, it attests that it is consistent with the services of attorneys who practice construction law, which is irrelevant. Accordingly, the Court finds that Counter-Plaintiffs' requested hourly rates are reasonable.

B. Hours reasonably expended

B-Side contends that the fee motion should be denied because Counter-Plaintiffs have failed to provide "a statement describing the manner in which time records were maintained." Opp. at 7 (citing Civil Local Rule 54-5(b)(2)). However, Counter-Plaintiffs have stated that Leonard Carder tracked its time using "detailed computerized contemporaneous time records" and that it utilized

11

"unique client reference numbers."  Hwang Decl. ¶¶ 6, 8; see also Hwang Reply Decl. ¶ 6.

B-Side does not seek to exclude any particular hours that Counter-Plaintiffs have included in their billing statement and for which they seek compensation.  Instead, it argues that it should only be required to pay an amount of the fees and costs that is proportionate to the amount of damages that Counter-Plaintiffs were awarded for the claims for which they can recover fees and costs.  However, as discussed above, the Court finds that they can recover fees and costs related to all of their claims. Further, even if the Court had found that Counter-Plaintiffs were not entitled to recover fees and costs attributable to the portion of the JAC award requiring payment to workers on the available to work list, "fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not." Akins v. Enterprise Rent-A-Car Co., 79 Cal. App. 4th 1127, 1133 (2000). Here, based on the history of the litigation before this Court, the covered and uncovered portions of the first cause of action were both factually and legally intertwined.  Thus, the research and work that Counter-Plaintiffs' counsel devoted to one cannot be separated from that devoted to the other and can be properly found to have been reasonably incurred in prosecution of the covered portion.  Accordingly, the Court finds no basis for apportionment of the fees and costs here.

Thus, the Court concludes that, prior to the instant motion, Counter-Plaintiffs reasonably expended 410.4 attorney hours[2] and 18.1 law clerk and paralegal hours in this litigation.  This includes: 37.9 attorney hours at a rate of $675 per hour; 269.6 attorney hours at a rate of $400 per hour; 102.9 attorney hours at a rate of $300 per hour; 12.3 law clerk hours at a rate of $180 per hour; 0.20 paralegal hours at a rate of $225 per hour; 2.5 paralegal hours at a rate of $200 per hour; and 3.1 paralegal hours at a rate of $180 per hour.  The total cost of these hours at the rates found reasonable above is $167,609.50.

The Court also finds that the Counter-Plaintiffs have shown that they reasonably expended 36.7 attorney hours and 9.1 law clerk and paralegal hours in the preparation of the instant motion through February 28, 2013.  This includes: 9.4 attorney hours at a rate of $675 per hour; 27.3 attorney hours at a rate of $300 per hour; and 9.1 paralegal hours at a rate of $200 per hour.  See Hwang Reply Decl. ¶ 5, Exs. A & B.  The total cost of these hours is $16,355.00.  Counter-Plaintiffs, however, have not made a sufficient showing for hours expended in March 2013.  Although Counter-Plaintiffs' counsel states that she estimates that an additional twenty-five hours of attorney time was spent on this motion during the month of March, she bases this estimate "on the time and billing records for the time spent on this motion during February 2013" rather than those for March 2013.  Hwang Reply

---

[2] This number reflects the hours contained in Exhibit A to the Hwang declaration.  See Hwang Decl. ¶ 3 & Ex. A.  The Court notes that Counter-Plaintiffs appear to have inadvertently added an additional half hour of attorney time elsewhere.  See Hwang Decl. ¶ 4.

13

Decl. ¶ 5.  Further, because the Court took the motion under submission on the papers and vacated the hearing, the Court does not award the five additional hours that Counter-Plaintiffs estimated they would spend preparing for and attending the hearing.

Finally, Counter-Plaintiffs have also shown that they reasonably spent $4,351.26 for expenses not included in the bill of costs.  Hwang Decl. ¶ 8 & Ex. D; Hwang Reply Decl. ¶ 7 & Ex. C.  As previously noted, B-Side has not challenged this amount.  Thus, the total reasonable attorneys' fees and costs awarded is $188,315.76.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Counter-Plaintiffs' motion for attorneys' fees and costs (Docket No. 137).  Counter-Plaintiffs are entitled to $188,315.76, payable within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: 5/24/2013

CLAUDIA WILKEN
United States District Judge